# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHUPINDER SINGH,<br><br>Petitioners,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-00675-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENTS' MOTION TO DISMISS, GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH NEW BOND HEARING<br><br>(ECF Nos. 15, 22) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of India who came to the United States on a student visa to pursue a master's degree on December 28, 2023 after being admitted to the University of the Pacific in Stockton, California. (ECF No. 22 at 3.[1]) After completing two semesters, Petitioner transferred to Golden Gate University in San Francisco.

Petitioner came to the United States with enough money to cover about two semesters of school. That money ran out and his family was unable to continue supporting him. As a result,

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

Petitioner found a package delivery job that he believed to be legitimate but was a scheme to defraud an elderly individual. On August 20, 2024 during one of his delivery runs, Petitioner was arrested because the package delivery turned out to be part of a plan to defraud the elderly victim of a large sum of money. (ECF No. 22 at 3–4.)

Petitioner accepted a plea bargain, pleading no contest to felony theft from elder adult on September 4, 2024. On October 2, 2024, Petitioner was sentenced to probation and 270 days confinement, but was permitted to serve at a half-time credit rate. Petitioner was permitted to return to school and finish out his semester before beginning his jail sentence on December 23, 2024. (ECF No. 22 at 4.)

Petitioner's criminal conviction and sentence resulted in the termination of his student visa on February 10, 2025. Following the conclusion of his jail sentence, on April 17, 2025, the Department of Homeland Security ("DHS") issued a notice to appear, charging Petitioner as removable pursuant to section 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"), and U.S. Immigration and Customs Enforcement ("ICE") picked up Petitioner from the jail and took him into custody. (ECF No. 22 at 5; ECF No. 22-6.) Petitioner has remained in immigration detention since that time. (ECF No. 22 at 5.)

Petitioner requested and was afforded a bond hearing, which occurred on November 18, 2025. The immigration judge denied bond, finding Petitioner posed both a danger and flight risk. (ECF No. 22 at 5; ECF No. 22-7.)

On January 26, 2026, Petitioner filed a *pro se* petition for writ of habeas corpus, asserting a prolonged detention due process claim. (ECF No. 1.) On March 21, 2026, Respondents filed a motion to dismiss the petition because Petitioner is "an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." (ECF No. 15 at 1.) On March 25, 2026, the Court appointed counsel for Petitioner. (ECF No. 16.)

On April 29, 2026, Petitioner filed a first amended petition ("FAP") raising the following claims for relief: (1) substantive due process violation for prolonged detention; (2) procedural due process violation for failure to provide adequate bond hearing procedures; and (3) failure to comply with detention procedures under § 1226(a) because no warrant was issued. (ECF No.

22.) On May 8, 2026, Respondents submitted on the previously filed pleadings. (ECF No. 27.) On May 22, 2026, Petitioner filed a reply. (ECF No. 29.)

On August 13, 2026, the Court granted Petitioner's motion for discovery in part. (ECF No. 31.) On August 19, 2026, Respondents filed a copy of the I-200 warrant and transcript of the November 18, 2025 bond hearing. (ECF No. 32.) On August 26, 2026, Petitioner filed a supplemental brief and withdrew Claim III of the FAP. (ECF No. 33.)

Meanwhile, on April 14, 2026, an immigration judge ordered Petitioner removed. On September 22, 2026, the Board of Immigration Appeals dismissed Petitioner's appeal. See Executive Office of Immigration Review, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 13, 2026). Petitioner has filed a petition for review with the Ninth Circuit, which has temporarily stayed Petitioner's removal until further order of the court. See Singh v. Blanche, No. 26-6472 (9th Cir. filed Oct. 2, 2026).[2]

**II.**

**DISCUSSION**

**A. Motion to Dismiss**

In response to the original *pro se* petition, Respondents filed a motion to dismiss, arguing that "Petitioner entered the United States illegally and was placed into removal proceedings. Petitioner is thus an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." (ECF No. 15 at 1.) In response to the FAP, Respondents state that they continue to oppose the petition for the reasons set forth in the motion to dismiss. (ECF No. 27 at 1.)

Petitioner did not enter the United States illegally, as asserted by Respondents, but rather entered on a valid student visa. Courts have held that U.S.C. § 1226(a) applies to noncitizens in circumstances similar to Petitioner's. See, e.g., Marquez v. Warden, No. 1:26-cv-04528-JLT-

[2] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted)). See also United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER."); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

SAB, 2026 WL 2268762, at *2 (E.D. Cal. Aug. 6, 2026) ("Petitioner is being charged as removable under 8 U.S.C. § 1227(a)(1)(B) which states: 'Any alien ... whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable' As such, Petitioner is currently in removal proceedings and his detention is governed by 8 U.S.C. § 1226(a)[.]"); Njafuh v. Andrews, No. 1:26-cv-03436-DAD-AC (HC), 2026 WL 1346860, at *1 (E.D. Cal. May 14, 2026) ("[R]espondent states that petitioner was previously admitted to the United States on a student visa in 2019 and he is therefore subject to detention pursuant to 8 U.S.C. § 1226(a)."); Eleuteri v. Archambault, No. 25-cv-03620-BAS-DDL, 2025 WL 3771468, at *1 (S.D. Cal. Dec. 31, 2025) ("The Government claims Petitioner failed to maintain his F-1 student visa status, and his pending Form I-485 does not provide lawful immigration status. (*Id.*) Therefore, the Government submits that Petitioner was placed in removal proceedings and detained pursuant to 8 U.S.C. § 1226(a)[.]"). Accordingly, the undersigned recommends finding that Petitioner's detention is governed by § 1226(a)[3] and denying Respondents' motion to dismiss.

**B. Procedural Due Process**

In Claim II of the FAP, Petitioner asserts that the procedures applied during Petitioner's bond hearing strongly violated his due process rights because the IJ denied bond despite Petitioner's "demonstrated record of complying with conditions of release and returning to court and custody as required" and the IJ's "stated rationale reveals that he failed to conduct the individualized review that a custody redetermination requires." (ECF No. 22 at 10.)

"[T]he determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" Martinez v. Clark, 124 F.4th 775, 779 (9th Cir. 2024). "When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion." Id. at 784. "Under an abuse of discretion standard, 'we cannot reweigh evidence ... [but] can [only]

[3] "An alien whose removal order is administratively final, but whose removal is stayed pending the court of appeals' resolution of his petition for review, may be subject to detention under § 1226(a), but not § 1231(a)(2) or (a)(6)." Prieto-Romero v. Clark, 534 F.3d 1053, 1067–68 (9th Cir. 2008).

determine whether the BIA applied the correct legal standard.'" Martinez, 124 F.4th at 785 (alterations in original) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771-72.

Martinez, 124 F.4th at 785.

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.*

Martinez, 124 F.4th at 783. "An Immigration Judge has broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "Any evidence in the record that is probative and specific can be considered." Id. at 40–41.

Here, the IJ denied bond based on danger and flight risk, stating:

> DANGER because of Respondent's California PC 368D conviction for elder theft, wherein he received 270 days to serve plus probation. Vulnerable victim. Felony. And this crime renders

> his relief far more speculative, as it makes him ineligible for asylum leaving only withholding and CAT, which are significantly harder to win. This heightens flight risk, which I find here as well.

(ECF No. 22-7 at .)

Petitioner argues, *inter alia*, that the IJ did not consider Petitioner's proffered documentary evidence, which included "a statement explaining the circumstances leading to his conviction, proof of address, school records demonstrating Mr. Singh's successful academic history, letters attesting to his character and work ethic, and the ID card of an individual willing to sponsor him." (ECF No. 33 at 4.) Respondents do not address this claim whatsoever. The bond hearing transcript reflects that Petitioner's counsel informed the IJ that he had submitted additional documents earlier that day and that the clerk would "make them visible" to the IJ "[i]n a little bit." (ECF No. 32 at 7.) However, there is nothing in the transcript demonstrating that the clerk in fact had made said documents visible to the IJ or that the IJ reviewed said documents before denying bond. Rather, the transcript suggests that the IJ did not review said documents given that the IJ did not discuss the specific circumstances leading to Petitioner's conviction or Petitioner's community ties before denying bond based on dangerousness and flight risk. "[W]here there is any indication that the [immigration court] did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand." Cole v. Holder, 659 F.3d 762, 771–72 (9th Cir. 2011). Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on Claim II of the FAP and a new bond hearing.

**C. Substantive Due Process**

In Count I of the FAP, Petitioner asserts a substantive due process claim, arguing that "under the Fifth Amendment's Due Process Clause, punitive measures cannot be imposed on people subject to immigration removal because all those within the United States are entitled to constitutional protections. While immigration detention is not always punitive, at some point, detention can become excessively prolonged and punitive, resulting in a due process violation." (ECF No. 22 at 7.)

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'" United States v. Quintero, 995

F.3d 1044, 1051 (9th Cir. 2021) (quoting U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." Id. (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." Salerno, 481 U.S. at 746 (internal quotation marks and citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." Salerno, 481 U.S. at 746 (citation omitted).

In Wong Wing v. United States, 163 U.S. 228 (1896), the Supreme "Court held that punitive measures could not be imposed upon aliens ordered removed because 'all persons within the territory of the United States are entitled to the protection' of the Constitution." Zadvydas, 533 U.S. at 694 (quoting Wong Wing, 163 U.S. at 238). See Zadvydas, 533 U.S. at 694 (Kennedy, J., dissenting) ("Where detention is incident to removal, the detention cannot be justified as punishment nor can the confinement or its conditions be designed in order to punish." (citing Wong Wing, 163 U.S. 228)).

"As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." Salerno, 481 U.S. at 746 (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). However, "[i]t is undisputed that at some point, . . . detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (quoting Salerno, 481 U.S. at 747 n.4). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." Torres, 995 F.3d at 708 (citing Salerno, 481 U.S. at 747).

\\\

In Torres, the Ninth Circuit held Torres's twenty-one-month criminal pretrial detention due to the COVID-19 pandemic and suspension of jury selection and trials did not violate due process, but "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.")). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (quoting Torres, 995 F.3d at 708).

"The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches' authority over immigration," and the Ninth Circuit has held that 8 U.S.C. § 1226(a), which "offers substantial procedural protections to detained persons," is not facially unconstitutional. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193–94 (9th Cir. 2022). Petitioner has not established that his case is distinguishable from Rodriguez Diaz in which the Ninth Circuit rejected the petitioner's prolonged detention due process claim and held that due process did not require a second bond hearing at which the government bears the burden of proof by clear and convincing evidence fourteen months after the petitioner's first § 1226(a) hearing was held. Rodriguez Diaz, 53 F.4th at 1193, 1213, 1203–14. Here, Petitioner has been detained for eleven months after his first § 1226(a) hearing was held, which is shorter than the fourteen months in Rodriguez Diaz. Petitioner has been detained for eighteen months total, shorter than the twenty-one months in Torres, and in the immigration detention context, the Ninth Circuit has upheld detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit. See Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008). Accordingly, the undersigned recommends finding that Petitioner is not entitled to relief on Claim I.

\\\

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Respondents' motion to dismiss (ECF No. 15) be DENIED;
2. The first amended petition for writ of habeas corpus (ECF No. 22) be GRANTED on Count II; and
3. Respondents be directed to provide Petitioner with a new bond hearing pursuant to 8 U.S.C. § 1226(a) and its implementing regulations.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 13, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE